**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

BRENT WEST                                          :
       Plaintiff,

   v.                                               :                    CIVIL ACTION
                                        NO. 17-1592

DAN LEPORE & SONS COMPANY.,            :
and ALDO CIANCIULLI, *Individually*
       Defendants.


## MEMORANDUM

**Jones, II    J.**                                                          **March 14, 2019**

## I.    Introduction

      Plaintiff Brent West commenced this action against his former employer, Dan Lepore &

Sons Company (hereinafter "Lepore") and Aldo Cianciulli, an employee of Lepore, alleging both

Defendants violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.*

(hereinafter "Title VII") (Counts I and II), the Pennsylvania Human Relations Act, 43 P.S. §§ 951

*et seq.* (hereinafter "PHRA") (Counts III  through V), and the Philadelphia Fair Practices

Ordinance, Phila. Code, §§ 9-1100 *et seq.* (hereinafter "PFPO") (Counts VI through VIII). Plaintiff

also brings one count of Assault and Battery against Defendant Cianciulli in his individual capacity

(Count IX). Specifically, Plaintiff claims Defendants unlawfully discriminated against him on the

basis of sex, and unlawfully retaliated against him when he complained of this discrimination.

      Presently before the court is Defendants' Motion for Summary Judgment.  For the reasons

set forth herein, Defendant Cianciulli's Motion shall be granted in part and denied in part, and

Defendant Lepore's Motion shall be denied in its entirety.

## II.    Statement of Facts[1]

Plaintiff was hired by Lepore as a construction laborer to work on a project at the new Philadelphia location of the Mormon Temple of Latter Day Saints (the "Temple Job") in the summer of 2015. (SUF ¶¶ 7, 14; CSUF ¶¶ 7, 14.)[2]  Cianciulli worked for Lepore as the foreman for the Temple Job. (SUF ¶ 19, CSUF ¶ 19.)  Cianciulli's responsibilities as foreman were to oversee the construction and make sure no one was injured. (SUF ¶ 20, CSUF ¶ 20.) During the time Plaintiff worked at the Temple job, Plaintiff claims Cianciulli subjected him to the following behavior: (1) pinched Plaintiff's nipple as he was holding a 300 pound stone while standing on scaffolding; (2) came up behind Plaintiff while he was kneeling, bear-hugged Plaintiff, then laid on top of him and "humped him" for at least one minute; (3) grabbed the side of Plaintiff's hardhat, "thrust his pelvis private parts against the side of [Plaintiff's] face" and humped him; (4) "tapped" Plaintiff on his genitals with a trowel; (5) poked Plaintiff's "butt hole" with his finger while Plaintiff was crawling into a scissor lift; and, (6) poked Plaintiff's "butt hole" with a caulk tube and slapped him hard on his behind, causing pain. (SUF ¶¶ 27(a)-(f),; CSUF ¶¶ 27(a)-(f); Defs.' Mot. Summ. J., Ex. A at A13, 33-40.)  Plaintiff testified that he informed Bob Boris of Defendant Cianciulli's conduct, and Boris went to Bob Walls regarding complaints of sexual harassment  of "all the guys."   (Defs.' Mot. Summ. J., Ex. A48.)  Plaintiff was eventually transferred to a different job site in November 2015, where he worked for three more weeks. (SUF ¶ 29, CSUF ¶ 29.) Plaintiff testified that soon after Plaintiff's transfer, Cianciulli walked by Plaintiff in the "job trailer" and slapped Plaintiff on the behind. (SUF ¶

---

[1] The undisputed facts in this matter are few.  However, in an effort to provide context for this Court's analysis, disputed facts are included herein and are identified as testimony.

[2] For purposes of the instant motion, this Court shall refer to Defendant's Statement of Undisputed Material Facts (ECF No. 16-2) as "SUF," and Plaintiff's Counterstatement of Material Facts (ECF No. 17-7) as "CSUF."

31(b), CSUF ¶ 31(b).) Cianciulli denies these events.  (SUF ¶ 32.)

Plaintiff further testified that he followed up with Bob Boris regarding the earlier complaints of sexual harassment he made to Bob Walls and Boris' response was that he told Walls and that Cianciulli was "just a freak."  (Defs.' Mot. Summ. J., Ex. A48.)  Thereafter, as Plaintiff was sitting in his car preparing to go to the job site one morning, he began hyperventilating and crying uncontrollably. (Defs.' Mot. Summ. J., Ex. A53.)  This was the last day of Plaintiff's employment with Defendants.   (SUF ¶ 33; CSUF ¶ 33.)  On December 22, 2015, Plaintiff filed a dual Charge of Discrimination with the EEOC, alleging discrimination on the bases of sex and workplace retaliation. (Defs.' Mot. Summ. J., Ex. E.)   A Right to Sue Letter was issued and Plaintiff commenced the within action.

## III. Standard of Review

Federal Rule of Civil Procedure 56(a) requires a court to grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine [dispute] as to any material fact and that the moving party is entitled to a summary judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); Fed. R. Civ. P. 56(a). "If the moving party meets its burden, the burden shifts to the nonmoving party to go beyond the pleadings and come forward with specific facts showing that there is a genuine issue for trial." *Santini v. Fuentes*, 795 F.3d 410, 416 (3d Cir. 2015) (internal citations and quotation marks omitted). Therefore, in order to defeat a motion for summary judgment, the non-movant must establish that the disputes are both: (1) material, meaning concerning facts that will affect the outcome of the issue under substantive law; and (2) genuine, meaning the evidence must be such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

"Although the initial burden is on the summary judgment movant to show the absence of a genuine issue of material fact, 'the burden on the moving party may be discharged by "showing"—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case' when the nonmoving party bears the ultimate burden of proof." *Singletary v. Pa. Dep't of Corr.*, 266 F.3d 186, 193 (3d Cir. 2001) (quoting *Celotex*, 477 at 325). "[A] nonmoving party must adduce more than a mere scintilla of evidence in its favor and cannot simply reassert factually unsupported allegations contained in its pleadings[.]" *Williams v. West Chester*, 891 F.2d 458, 460 (3d Cir. 1989) (citation omitted). Accordingly, summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. *See also Marino v. Indus. Crating Co.,* 358 F.3d 241, 247 (3d Cir. 2004) ("In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'") (quoting *Anderson,* 477 U.S. at 255); *Cardenas v. Massey*, 269 F.3d 251, 254 (3d Cir. 2001) ("An issue is genuine if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party' . . . the judge's role when adjudicating a motion for summary judgment 'is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.' In making this determination, a court is to draw all reasonable inferences in favor of the non-moving party.") (internal and external citations omitted); *Cooper v. Chippewa Twp.*, 17cv1464, 2018 U.S. Dist. LEXIS 171001, at *3 (W.D. Pa. Oct. 3, 2018) (finding summary judgment inappropriate where "[t]he evidence supporting Defendants' and Plaintiff's respective positions

largely turns on testimony" because [t]estimony requires a credibility determination, which this Court is not permitted to make under these circumstances.").

## IV. Discussion

### i. Title VII Claims

#### a. Title VII Hostile Work Environment

In Count I of his Complaint, Plaintiff brings a claim against Defendant Lepore for hostile work environment arising under Title VII.[3] (Compl. ¶¶ 50-52.)

The standard a plaintiff must satisfy in this regard has been stated as follows:

> To establish a claim for sex discrimination by way of hostile work environment, a plaintiff must demonstrate: 1) he or she suffered intentional discrimination because of his/her sex, 2) the discrimination was severe or pervasive, 3) the discrimination detrimentally affected the plaintiff, 4) the discrimination would detrimentally affect a reasonable person in like circumstances, and 5) the existence of *respondeat superior* liability.

*Mandel v. M&Q Packaging Corp.*, 706 F.3d 157, 167 (3d Cir. 2013).

When assessing a record in conjunction with the above criteria, the court must remain mindful that "[a] play cannot be understood on the basis of some of its scenes but only on its entire performance, and similarly, a discrimination analysis must concentrate not on individual incidents, but on the overall scenario." *Robinson v. Southeastern Pa. Transp. Auth.*, 982 F.2d 892, 896 (3d Cir. 1993).

---

[3] The "First Cause of Action" presented in Plaintiff's Complaint, is for "Discrimination Under Title VII." (Compl. ¶¶ 50-52.) Although Plaintiff does not specifically use the term "hostile work environment," he does incorporate by reference several instances of same. (Compl. ¶¶ 1, 21, 23, 34, 37-38, 48.) Moreover, inasmuch as the parties have treated Count I as a hostile work environment claim, this Court shall do the same. *See Rhodes v. SCI-Somerset*, Civil Action No. 3:2006-156, 2009 U.S. Dist. LEXIS 13754, *17-18 (M.D. Pa. Feb. 23, 2009) (assessing the Complaint as a whole to assure it contains "basic statements supporting [the] claims" and finding Plaintiff "*essentially raises* four claims under Title VII, for harassment, discrimination, hostile work environment, and retaliation.") (emphasis added).
.

Upon review of the record presented by the parties in the instant case, this Court finds Lepore has not satisfied its initial burden of showing there is no genuine issue of material fact regarding these five elements. Facts material to the first element are in dispute—in particular, whether Cianciulli's acts towards Plaintiff were motivated by sex. Lepore contends *Bibby v. Philadelphia Coca Cola Bottling Co.* is controlling Third Circuit precedent which "expanded the evidentiary path" provided by *Oncale v. Sundowner Offshore Servs.* for proving harassment by an individual of the same sex as the plaintiff. (Defs' Mot. Summ. J. 14) (citing *Bibby,* 260 F.3d 257 (3d Cir. 2001), *Oncale,* 523 U.S. 75 (1998)). Lepore mischaracterizes both *Bibby* and *Oncale*. *Bibby* does not provide a mandatory categorical test for same-sex harassment; it provides an evidentiary method for proving such harassment. *Bibby,* 260 F.3d at 264. In fact, *Bibby* cannot provide a mandatory test because *Oncale* prohibits "categorical rule[s] [which would] exclude same-sex harassment claims from the coverage of Title VII." 523 U.S. at 79. [4]

The Court in *Oncale* noted that "harassing conduct need not be motivated by sexual desire to support an inference of discrimination on the basis of sex." *Id.* at 80. The Court

_____

[4] Defendant Lepore mischaracterizes *Oncale* (Defs' Mem. Supp. Summ. J. 16, Defs.' Reply Br. Supp. Summ. J. 3) in asserting that *Oncale* establishes a burden for a plaintiff to provide credible evidence of the harasser's homosexuality. 523 U.S. at 80. This is simply not the case. The *Oncale* Court reasoned "that evidence of the harasser's homosexuality" is merely one evidentiary path "to support an inference of discrimination," stating that "…harassing conduct need not be motivated by sexual desire to support an inference of discrimination on the basis of sex." *Id.* Defendant Lepore also cites to *Betz v. Temple Health Sys.* for the proposition that *Bibby* is "authority for demonstrating same-sex harassment," so as to argue the *Bibby* test as framed in *Austin* is mandatory. (Defs.' Reply Br. Supp. Summ. J. 3) (citing *Betz,* 659 F. App'x 137 (3d Cir. 2016; *Austin v. Bloomin' Brands, Inc.*, Civ. 15-6509, 2017 U.S. Dist. LEXIS 139537 (E.D. Pa. Aug. 30, 2017).) However, this Court notes that in *Betz*, the Third Circuit upheld application of the *Bibby* test as an evidentiary method but specifically did not cast the test in mandatory terms. *Betz,* 659 F. App'x at 143. Although the district court case on appeal in *Betz* framed the *Bibby* test in mandatory terms, it cannot be mandatory under *Oncale*. *See Betz v. Temple Health Sys.* Civ. 15-0727, U.S. Dist LEXIS 103626, at *8, (E.D. Pa., Aug. 7, 2015) ("[Plaintiff] *must* satisfy one of the three [*Bibby*] prongs needed to support a claim of same-sex harassment[.]") (emphasis added).

reasoned that it "s[aw] no justification in the statutory language [of Title VII] or [Supreme

Court] precedents for a categorical rule excluding same-sex harassment claims from the coverage

of Title VII." *Id.* at 79. "Whatever evidentiary route the plaintiff chooses to follow, he or she

must always prove that the conduct at issue was not merely tinged with offensive sexual

connotations, but actually constituted '*discrimination* . . . because of . . . sex.'"[5] *Id.* at 81

(emphasis in original). As such, *Bibby* sets forth an illustrative test to aid courts in assessing

claims of same-sex harassment. 260 F.3d at 264. To that end, the Third Circuit in *Bibby* opined:

> [T]here are at least three ways by which a plaintiff alleging same-sex sexual
> harassment might demonstrate that the harassment amounted to discrimination
> because of sex -- the harasser was motivated by sexual desire, the harasser was
> expressing a general hostility to the presence of one sex in the workplace, or the
> harasser was acting to punish the victim's noncompliance with gender stereotypes.
> Based on the facts of a particular case and the creativity of the parties, ***other ways
> in which to prove that harassment occurred because of sex may be available***.

*Bibby,* 260 F.3d at 264 (emphasis added).

Citing to *Bibby,* the court in *Austin v. Bloomin' Brands, Inc.* provided a helpful example

that is clearly distinguishable from the instant case. Civ. 15-6509, 2017 U.S. Dist. LEXIS

139537, at *11-12 (E.D. Pa. Aug. 30, 2017). [6] The *Austin* court looked to whether there might be

any other motivation for the alleged conduct against the plaintiff besides a sexual motivation,

---

[5] This Court notes that *Oncale* specifically excludes "conduct that is not severe or pervasive
enough to create an objectively hostile or abusive work environment" from the protection of
Title VII. 523 U.S. at 81. The Supreme Court "…regard[s] [this] requirement as crucial, and as
sufficient to ensure that courts and juries do not mistake ordinary socializing in the workplace—
such as male-on-male horseplay or intersexual flirtation—for discriminatory conditions of
employment." *Id.*

[6] This Court does note a discrepancy in *Austin*, which states"[t]here are three ways to prove
sexual harassment was 'because of sex' when the victim and perpetrator are the same sex." 2017
U.S. Dist. LEXIS 139537, at *11(internal citation omitted). As set forth above, the actual
language of *Bibby* was: "there are *at least* three ways by which a plaintiff alleging same-sex
sexual harassment might demonstrate that the harassment amounted to discrimination because of
sex." 260 F.3d at 264 (emphasis added).

finding that since "the [sexual] behavior, [which occurred prior to Plaintiff's employment], became directed towards [the plaintiff] only after [the plaintiff] complained about [the behavior to management]," the "[sexual] behavior was [not] motivated by his presence." *Id.* at *11. Another court reasoned that there need not even be contact between members of the same sex in order to satisfy "the first prong [of the *Bibby* test]." *Resetar v. Phillips Feed Serv.*, Civ. 16-3428, 2017 U.S. Dist. LEXIS 42059, at *8 (E.D. Pa. Mar. 23, 2017). The *Resetar* court found "[t]he [female Chief Marketing Officer's daily staring at [plaintiff's] breasts could also show that the CMO sexually desired [the plaintiff], which is sufficient proof of the first prong." *Id.*

In the instant case, the record now before the court does not resolve whether Cianciulli's actions towards Plaintiff were the result of anything other than sexually motivated. *Austin*, 2017 U.S. Dist. LEXIS 139537, at *11. Here, the alleged conduct towards Plaintiff began "immediately" after his arrival at the Temple Job, unlike in *Austin*, where the plaintiff was subjected to harassing behavior only after complaining that he had observed it among other employees.[7] (Defs.' Mot. Summ. J. Ex. A12.) The plaintiff in *Austin* was not subjected to physical contact in the same manner as Plaintiff in this case.[8] The conduct herein also goes beyond what was sufficient in *Resetar* to satisfy the first element of the *Bibby* criteria. 2017 U.S. Dist. LEXIS 42059, at *8. Defendants do not dispute that Plaintiff "claims" Defendant Cianciulli: (1) pinched Plaintiff's nipple when he was holding a stone in place; (2) came up behind Plaintiff while he was kneeling, bear-hugged him, and then laid down on top of Plaintiff

---

[7] Unlike in *Austin*, Cianciulli's behavior was immediately targeted at Plaintiff, without Plaintiff providing Cianciulli the impetus for some other motivation, such as angering him by reporting his prior behavior. This constitutes a strong distinction between the cases. 2017 U.S. Dist. LEXIS 139537, at *11.

[8] "[Plaintiff] would bend over and a colleague would 'brush past' his rear." *Austin*, 2017 U.S. Dist. LEXIS 139537, at *6.

and "humped him" for at least a minute; (3) "humped" the side of Plaintiff's hard hat as he was sitting, eating lunch; (4) "tapped" Plaintiff on his genitals with a trowel; (5) poked Plaintiff's "butt hole" with his finger while Plaintiff was crawling into a scissor lift; and, (6) poked Plaintiff's "butt hole" with a caulk tube, then came up behind Plaintiff and slapped him hard on his behind. (SUF ¶¶ 27(a)-(f), CSUF¶¶ 27(a)-(f).)  Defendants simply state that Defendant Cianciulli "denies that he ever touched West inappropriately." (SUF ¶ 32.)[9]  Because genuine issues of material facts remain in dispute and this is purely a credibility issue that cannot be resolved by the record, this issue must proceed to a jury.

Similarly, there remains a genuine issue of material fact regarding the severity or pervasiveness of the alleged discrimination.  It is well settled that:

> The question of whether an environment is sufficiently hostile or abusive must be judged by looking at all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.

*Moody v. Atl. City Bd. of Educ.*, 870 F.3d 206, 215 (3d Cir. 2017) (citations and quotation marks omitted).

As set forth more fully above, Plaintiff herein testified that for more than two months, he was the subject of harassment in the form of unsolicited verbal and physical behavior by Cianciulli.  (Defs.' Mot. Summ. J., Ex. A.)  Plaintiff further testified that some of this behavior cause physical and psychological pain, including leg pain and a temporary inability to work at higher heights.  (Defs.' Mot. Summ. J. Ex. A at A32-38, 47, 53, 55, 62-66.)  Cianciulli testified otherwise.  (Defs.' Mot. Summ. J., Ex. C.)  Again, credibility issues remain which may only be

---

[9]   In further support of this element, Plaintiff points out that Defendant Cianciulli did not treat females working on the same job site the way he treated Plaintiff.  (Pl.'s Opp'n Mot. Summ. J., Ex. A at A22.)

resolved by a factfinder at trial.

The same is also true with respect to the detrimental effect the alleged discrimination had on Plaintiff. Defendants do not dispute Plaintiff's claim that after weeks of being subjected to Cianciulli's behavior, Plaintiff began hyperventilating and crying as he sat in his car, preparing to go to the job site. (Defs.' Mot. Summ. J., Ex. A at A53.) Plaintiff subsequently stopped showing up for work. (SUF ¶ 33; Defs.' Mot. Summ. J., Ex. A at A53-54.) Defendants have not demonstrated by sufficient evidence of record that Plaintiff was not was not constructively discharged from employment with Lepore and was detrimentally affected by same.

The standard for assessing constructive discharge claims has been explained as follows:

> [A plaintiff] must show that "the employer knowingly permitted conditions of discrimination in employment so intolerable that a reasonable person subject to them would resign." *Aman v. Cort Furniture Rental Corp.*, 85 F.3d 1074, 1084 (3d Cir. 1996). We employ an objective test and thus an employee's subjective perceptions of unfairness or harshness do not govern a claim of constructive discharge. *Gray v. York Newspapers, Inc.*, 957 F.2d 1070, 1083 (3d Cir. 1992). In determining whether an employee was forced to resign, we consider a number of factors, including whether the employee was threatened with discharge, encouraged to resign, demoted, subject to reduced pay or benefits, involuntarily transferred to a less desirable position, subject to altered job responsibilities, or given unsatisfactory job evaluations. *Colwell v. Rite Aid Corp.*, 602 F.3d 495, 503 (3d Cir. 2010).

*Mandel v. M&Q Packaging Corp.*, 706 F.3d 157, 169-170 (3d Cir. 2013).

In this case, if a jury was to believe Plaintiff's testimony and discredit Defendants', it could reasonably find that Bob Walls, a supervisor employed by Lepore, was aware of the conditions complained of by Plaintiff and permitted them to continue.[10] Plaintiff also testified that Cianciulli repeatedly warned Plaintiff "I don't need you" and on at least one occasion, told

---

[10] This Court notes that during his deposition, Bob Walls testified that he told the masons and Plaintiff "If they didn't like the way Aldo was running the job, there's the gate, they can leave." (Defs.' Mot. Summ. J., Ex. A at A87.)

Plaintiff he could "fire" Plaintiff and he could "get rid" of Plaintiff. (Defs.' Mot. Summ. J., Ex. A at A34-35.) If this is found to be credible, Plaintiff may meet his burden. Moreover, it is undisputed that Plaintiff was transferred from the Temple Project to the Meetinghouse Project, after which time Cianciulli's alleged conduct continued. (SUF ¶ 29; SUF ¶ 31; CSUF ¶ 31; Defs.' Mot. Summ. J., Ex. A at A51-52.) In light of Plaintiff's testimony regarding the nature of Cianciulli's conduct after the transfer and Cianciulli's denial of same, genuine issues of material fact remain.

Next, Defendants have not provided this Court with any uncontroverted evidence that Cianciulli's conduct would not detrimentally affect a reasonable person in like circumstances. Drawing all reasonable inferences in Plaintiff's favor, as this Court must do, any reasonable person who had to endure conduct such as that testified to by Plaintiff, would most certainly be detrimentally affected.

Lastly, the issue of whether or not Cianciulli was Plaintiff's supervisor remains unanswered by the record and boils down to credibility. The Supreme Court has held that "an employer is directly liable for an employee's unlawful harassment if the employer was negligent with respect to the offensive behavior." *Vance v. Ball State Univ.,* 570 U.S. 421, 427 (2013). "Under Title VII, an employer's liability for such harassment may depend on the status of the harasser." *Id*. at 424. "If the harassing employee is the victim's co-worker, the employer is liable only if it was negligent in controlling working conditions." *Id*. "In cases in which the harasser is a supervisor, however, different rules apply." *Id*. at 424. If the discrimination "culminates [in the supervisor taking] tangible employment action against the plaintiff, the employer is strictly liable."[11] *Id*. (internal quotations omitted).

---

[11] The Supreme Court refers to this analytical framework as the *"Ellerth/Faragher* framework*."*

This Court first addresses whether Lepore may be liable for the actions of Cianciulli as Plaintiff's co-worker. "When an employer's response stops the [co-worker's] harassment, there can be no employer liability under Title VII." *Weston v. Pennsylvania,* 251 F.3d 420, 427 (3d Cir. 2001). "[The Third Circuit] rule envisions prompt remedial action when the hostile environment is discovered." *Id.* at 426 (internal quotation and citation omitted). "[By] definition, there is no negligence if the [sexual harassment grievance] procedure is effective." *Bouton v. BMW of N. America, Inc.,* 29 F.3d 103, 110 (3d Cir. 1994).[12] Although Lepore denies Plaintiff complained of the conduct to Lepore management, Plaintiff testified that he spoke to Bob Boris (a.k.a "Big Bob"), a labor foreman and occasional supervisor for Defendant Lepore,[13] about Cianciulli's conduct on two occasions prior to being transferred, and on both occasions Boris replied that he had spoken about Cianciulli's conduct to supervisor Bob Walls.[14] (Defs.' Mot. Summ. J. Ex. A48.) Moreover, Plaintiff testified that after his transfer to a different job site, Cianciulli "walked by Plaintiff in the 'job trailer' and slapped Plaintiff on the behind." (SUF ¶ 31; CSUF ¶ 31.) Cianciulli denies he engaged in this conduct. (SUF ¶ 32; CSUF ¶ 32.)

---

*Vance*, 570 U.S. at 439-40.

[12] Defendants submit a written harassment policy that was circulated to Lepore supervisors on August 13, 2015 with a directive for all foreman to post the policy at jobsites. (Defs.' Mot. Summ. J., Ex. D.) Plaintiff testified that he never saw any employee handbook or harassment policy at any time during his employment with Lepore. (Pl.'s Opp'n Mot. Summ. J., Ex. 1, ¶ 8.)

[13] Defs' Mot. Summ. J., Ex. B at A89.

[14] Bob Walls had the ability to hire and fire employees. (Defs.' Mot. Summ. J., Ex. B at A79.) The ability to hire or fire is a dispositive fact to show an employee is a supervisory employee. *Weston v. Pennsylvania,* 251 F.3d 420, 453 (3d Cir. 2001). An analysis of whether the employer was aware of the hostile work environment does not revolve around whether Plaintiff complained directly to company management, but whether the employer was on notice of the alleged harassment. Supervisory employees share an agency relationship with the employer for the purposes of Title VII under a theory of *respondeat superior*, therefore notice to a supervisory employee functions as notice to the company itself. *See Levendos v. Stern Entertainment*, 909 F.2d 747, 752 (3d. Cir. 1990) (" [I]t seems clear that…notice to…supervisory employees…may be imputed to the employer.")

Clearly, there remains a genuine issue of material fact with regard to whether Lepore received notice of the alleged harassment. (Defs.' Mot. Summ. J., Ex. A at A48-49.) In the event Lepore did receive such notice, a question remains as to whether Plaintiff's transfer was in response to such notice, and whether this response actually stopped the alleged harassment. Accordingly, summary judgment is not appropriate on the issue of whether Lepore may be held liable for the actions of Cianciulli, as Plaintiff's co-worker.

This Court next considers whether, in the alternative, Lepore may be held liable for Cianciulli's actions as Plaintiff's supervisor. The Supreme Court has held that "[a]n employee is a 'supervisor' for purposes of vicarious liability under Title VII if he or she is empowered by the employer to take tangible employment actions against the victim."[15] *Vance*, 570 U.S. at 424. The Court further describes that under the *Ellerth/Faragher* framework, "…[t]angible employment actions are the means by which the supervisor brings the official power of the enterprise to bear on subordinates." *Id*. at 440. In this case, the record provides conflicting testimony with respect to whether Cianciulli had the ability to recommend employees for termination from employment. (Defs.' Mot. Summ. J., Ex. A at A38, Ex. B at A89, 96, 99.) However, at one point during his deposition, Cianciulli specifically described his authority as including an ability to initiate proceedings for termination against employees under his purview. (Defs.' Mot. Summ. J., Ex. C at A110-11.) Therefore, a jury could reasonably find that Cianciulli possessed the means by which "bring[] the official power of the enterprise to bear on subordinates."

---

[15] The Third Circuit provides a non-exclusive list of dispositive examples of "tangible employment action[s]." *Weston*, 251 F.3d at 453. "The term tangible employment action…constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Id*.

Accordingly, genuine issues of material facts remain in dispute as to whether Cianciulli could be deemed a supervisor and therefore expose Lepore to potential liability for his acts as Plaintiff's supervisor. For these reasons, Defendant Lepore's Motion for Summary Judgment as it pertains to Count I of the Complaint is denied.

### b. Title VII Retaliation

Defendant Lepore next seeks summary judgment on Plaintiff's retaliation claim arising under Title VII. "To establish a *prima facie* case of retaliation, a plaintiff must prove: (1) [he or she] engaged in protected activity; (2) the employer took an adverse employment action against [him or her]; and (3) a causal connection between the protected activity and the adverse employment action." *LaRochelle v. Wilmac Corp.*, 210 F. Supp. 3d 658, 698 (E.D. Pa. 2016). "An adverse employment action must be serious and tangible enough to alter an employee's compensation, terms, conditions, or privileges of employment." *Canete v. Barnabas Health Sys.*, 718 F. App'x 168, 169 (3d Cir. 2018) (citing *Robinson v. City of Pittsburgh*, 120 F.3d 1286, 1300 (3d Cir. 1997) ("[An adverse employment action] other than discharge or refusal to rehire is…proscribed by Title VII…if it adversely affects…[the plaintiff's] status as an employee.")). "Once a plaintiff carries the burden of making out a *prima facie* case, the burden shifts to the employer to advance a legitimate, non-retaliatory reason for its actions." *Downs v. Anapol Schwartz, PC*, Civ. 14-630, 2015 U.S. Dist. LEXIS 106147, at *30-31 (E.D. Pa. Aug. 12, 2015) (internal citation and quotation marks omitted). "The final burden is on the plaintiff to convince the factfinder both that the employee's proffered explanation was false, and that retaliation was the real reason for the adverse employment action." *Id.*(internal citation and quotation marks omitted ). "To overcome a summary judgment motion, a plaintiff must point to evidence that is sufficient to discredit the defendant's proffered reasons, but need not produce additional

evidence beyond his or her prima facie case." *Id.* (internal citation omitted).

In this case, it is undisputed that Plaintiff stopped showing up for work after being transferred to a different job site. (SUF ¶ 29; CSUF ¶ 29.) However, as discussed above, Plaintiff testified that he spoke to Boris[16] twice about Cianciulli's conduct before Plaintiff was transferred, and that on both occasions, Boris said he had spoken to Bob Walls about Cianciulli's conduct.[17] (Defs.' Mot. Summ. J. Ex. A at A48-49.) Therefore, material facts remain in dispute as to whether Plaintiff complained to Lepore management, and whether Lepore was on notice of the alleged discrimination. This is a credibility determination that cannot be made by means of a motion for summary judgment.

Moreover, although Plaintiff admits that he "quit Lepore," he did so only after purportedly suffering a breakdown in his car while sitting in a parking lot, preparing to go to work. (SUF ¶ 41; CSUF ¶ 41; Defs.' Mot. Summ. J., Ex. A at A53.) As such, a genuine issue of material fact remains with respect to whether the circumstances of Plaintiff's departure from the job constituted a constructive discharge under Third Circuit precedent, because Plaintiff's "decision to leave was…based upon…[prior] discriminatory treatment."[18] *Aman v. Cort Furniture Rental Corp.*, 85 F.3d 1074, 1084 (3d Cir. 1996).

---

[16] Walls testified that there were times when Boris did act in a supervisory capacity. (Defs.' Mot. Summ. J., Ex. B at A89.)

[17] "A formal letter of complaint to an employer is not the only way to meet the protected activity criterion…protected activities include formal charges of discrimination, as well as informal protests of discriminatory employment practices, including making complaints to management." *Warner v. Kmart Corp.*, Civ. 2005-0128, 2009 U.S. Dist. LEXIS 44502, at *33-34 (D.V.I. May 27, 2009) (internal citation omitted). "[F]ormal notice is not always required to sustain a case of constructive discharge under Title VII." *Levendos*, 909 F.2d at 753.

[18] *See Aman v. Cort Furniture Rental Corp.*, 85 F.3d 1074, 1084-87 (3d Cir. 1996) (constructive discharge and retaliation claims considered in tandem); *Sokol v. Reading Reg'l Airport Auth.,* Civ. 99-111, 2000 U.S. Dist. LEXIS 8735, at *17 (E.D. Pa. May 25, 2000)("This Court has already determined that constructive discharge is an actionable form of retaliation… in the context of employment discrimination cases.") (internal citations omitted).

As discussed above, "[a] constructive discharge may occur when the employer is aware that the employee has been subjected to a continuous pattern of harassment and the employer does nothing to stop it." *Duffy v. Paper Magic Group*, 265 F.3d 163, 168 (3d Cir. 2001). The Third Circuit employs "an objective test to determine whether an employee [has been] constructive[ly] discharge[d]." *Id.* at 167. "Specifically, a court must determine whether a reasonable jury could find that the employer permitted conditions so unpleasant or difficult that a reasonable person would have felt compelled to resign." *Duffy*, 265 F.3d at 167. "Several incidents of discriminatory conduct [are] legally sufficient to raise the issue of constructive discharge." *Id.* at 168. Citing to *Clowes*, the *Duffy* court noted that factors such as threats to fire a plaintiff or encouraging a plaintiff to resign should also be considered in assessing a constructive termination claim. *Duffy*, 265 F.3d at 168 (citing *Clowes v. Allegheny Valley Hospital*, 991 F.2d 1159, 1161 (3d Cir. 1993)).[19]

In this case, transferring Plaintiff "across the street" from the job site where Plaintiff's alleged harasser worked after Plaintiff "had been subjected to a continuous pattern of harassment" did not eliminate the problem, as Cianciulli came over to the Meeting House job site where Plaintiff was working, and the two men saw each other on occasion in the break trailer, where Cianciulli allegedly continued the harassing conduct. (SUF ¶¶ 29, 31; CSUF ¶¶ 29, 31; Defs.' Mot. Summ. J., Ex. A at A51-52.) As such, a jury could reasonably find Plaintiff's job to

---

[19] The test necessary to demonstrate a constructive discharge is an objective test as described herein, though there are no mandatory factors. *Duffy,* 265 F.3d at 168. As previously set forth, "[t]he [Third Circuit]…laid out a number of factors that may be indicative of a constructive discharge: "(1) threat of discharge; (2) suggesting or encouraging resignation; (3) a demotion or reduction of pay or benefits; (4) involuntary transfer to a less desirable position; (5) alteration of job responsibilities; and (6) unsatisfactory job evaluations." *McCall v. Butler Health Sys./Butler Mem'l Hosp.,* Civ. 13-130, 2013 U.S. Dist. LEXIS 170719, at *13 (W.D. Pa. Dec. 4, 2013) (citing *Clowes v. Allegheny Valley Hosp.*, 991 F.2d 1159, 1161 (3d Cir. 1993)). However, the court in *Duffy* specifically stated that the test was not dispositive. 265 F.3d at 168.

be rendered "impossible...[and] unbearable." *Duffy*, 265 F.3d at 168.

Last, this Court finds that if a jury credits Plaintiff's testimony and determines he was constructively discharged, said jury could reasonably find Plaintiff has met his burden of showing a causal connection between the protected activity and the adverse employment action.

In view of the foregoing, genuine issues of material facts pertaining to Plaintiff's retaliation case—whether Plaintiff engaged in a protected activity and whether Plaintiff was constructively discharged—remain in dispute. Accordingly, summary judgment is not appropriate and shall be denied with respect to this claim.

### ii. PHRA Claims

Defendants next seek summary judgment on Plaintiff's claims for discrimination arising under the Pennsylvania Human Relation Act ("PHRA"), 42 Pa.C.S.A. § 955. This Court shall address each in turn.

### a. PHRA Discrimination

In Count III of his Complaint, Plaintiff brings a claim for discrimination arising under PHRA § 955(a). (Compl. ¶¶ 56-59.)[20] Claims brought under Title VII and the PHRA are analyzed under the same standards. *Russell v. Strick Corp.*, Civ. 97-806, 1997 U.S. Dist. LEXIS 9562, at *8 (E.D. Pa. July 8, 1997). As discussed above, material facts remain in dispute as to whether Lepore discriminated against Plaintiff. Therefore, Lepore's Motion for Summary Judgment as it pertains to Count III of Plaintiff's Complaint must be denied. However, inasmuch as "[i]ndividual liability under the PHRA is [not] permitted under 955(a)[,]" Cianciulli's Motion

---

[20] Although Plaintiff also avers in Count III of his Complaint that he is making "a claim against Defendants under all of the applicable paragraphs of the PHRA § 955[,]" he brings a separate cause of action against Defendant both Defendants in Count IV (citing to § 955(d) and against Cianciulli under § 955(e) in Count V. As such, this Court shall only address claims arising under § 955(a) as cited by Plaintiff in Count III.

for Summary Judgment on Count III of Plaintiff's Complaint shall be granted. *Mathews v. Hermann*, Civ. 07-0138, 2008 U.S. Dist. LEXIS 35726, at *61 (E.D. Pa. Apr. 30, 2008).

### b.  PHRA Retaliation

In Count IV of his Complaint, Plaintiff brings a claim for retaliation arising under PHRA § 955(d). (Compl. ¶¶ 60-62.)

A violation occurs under Subsection (d) when:

> [A]ny person, employer, employment agency or labor organization [ ] discriminate[s] in any manner against any individual because such individual has opposed any practice forbidden by this act, or because such individual has made a charge, testified or assisted, in any manner, in any investigation, proceeding or hearing under this act.

43 P.S. § 955(d).

While some courts have reasoned that individual liability for an employee is only cognizable under PHRA §955(e) because the language of this section specifically contains the word "employee,"[21] there has been a more recent focus on the "any person" language to impute liability to employees.[22] Therefore, Cianciulli can be held liable in his individual capacity "if

---

[21] *See e.g. Dickinson v. Millersville Univ. of Pa.*, Civ. 13-5022, 2014 U.S. Dist. LEXIS 45985, at *13 (E.D. Pa. Apr. 3, 2014) ("the PHRA permits [individual] liability in certain circumstances …stating it is an unlawful discriminatory practice [f]or any person, employer, employment agency, labor organization *or employee,* to aid, abet, incite, compel or coerce the doing of any act declared by this section to be an unlawful discriminatory practice." (emphasis added)(internal citation omitted).

[22] *See Fleet v. CSX Intermodal, Inc.,* Civ.17-3562, 2018 U.S. Dist. LEXIS 37942, at *8 (E.D. Pa. Mar. 18, 2018) ("Section 955(d) of the PHRA and Section 9-1103(1)(g) of the PFPO impose liability on 'any person' for retaliation."); *Hernandez v. EHC Assocs.*, 2018 U.S. Dist. LEXIS 101993, at *12 (E.D. Pa. Jun 19, 2018) ("…§ 955(e) uses the language "any person" to describe those covered by the provision…"); *Vazquez v. Carr & Duff, Inc.,* Civil Action No. 16-1727, 2017 U.S. Dist. LEXIS 160972, at *19 (E.D. Pa. Sept. 28, 2017) ("Under…PHRA [§ 955(d)], both employers and individual employees can be held liable for retaliation…"); *Phillips v. Heydt*, 197 F. Supp. 2d 207, 223 (E.D. Pa. 2002) ("[W]hen a plaintiff can demonstrate that an individual defendant either retaliated against him or her or aided and abetted the discriminatory practices, that individual can be personally liable under the PHRA, even though the same defendant may not be found liable under Title VII.")

[Plaintiff] can show that [Cianciulli] either *retaliated* against him for enforcing his rights or aided and abetted the creation of a hostile work environment[.]" *Phillips v. Heydt*, 197 F. Supp. 2d 207, 224 (E.D. Pa. 2002) (emphasis added).

As discussed above, because Cianciulli's potential role as a supervisory employee could impute liability upon Lepore, the same analysis in the context of the PHRA will not be repeated here. Beyond that, Plaintiff testified that after he complained of Cianciulli's conduct to Boris, Boris told Walls. (Defs.' Mot. Summ. J., Ex. A at A48-49.) Plaintiff was then transferred to the new job site—a job site on which Cianciulli's trailer was located. (Defs.' Mot. Summ. J., Ex. B at A91.) Facts are in dispute as to whether Cianciulli: went over to where Plaintiff was working and asked Plaintiff "Do you have a problem with me?"; walked by Plaintiff in the job trailer and "slapped him on the ass"; and, told Plaintiff "I can get rid of you." (Defs.' Mot. Summ. J., Ex. A at A51-52.) Therefore, the record as it currently exists raises questions as to whether Cianciulli was aware Plaintiff had complained to Lepore management, and if so, whether Cianciulli retaliated against Plaintiff for engaging in said activity. Accordingly, Cianciulli's Motion for Summary Judgment on Count IV of Plaintiff's Complaint shall be denied.

### c.    PHRA Aiding and Abetting

In Count V of his Complaint, Plaintiff brings a claim against both Defendants for aiding and abetting an unlawful discriminatory practice arising under PHRA § 955(e). (Compl. ¶¶ 63-65.)

Section 955(e) further permits individual liability if it is shown that:

> [A]ny person . . . aid[ed], abet[ted], incite[d], compel[led] or coerce[d] the doing of any act declared by this section to be an unlawful discriminatory practice, or to obstruct or prevent any person from complying with the provisions of this act or any order issued thereunder, or to attempt, directly or indirectly, to commit any act declared by this section to be an unlawful discriminatory practice.

43 P.S. § 955(e).

Once again, in order for individual liability to attach, Plaintiff must demonstrate that Cianciulli held a supervisory position. *See Hewitt v. BS Transp. of Ill., LLC*, Civil Action No. 18-712, 2019 U.S. Dist. LEXIS 6407, at *20 (E.D. Pa. Jan. 11, 2019) (recognizing that "courts have limited individual liability under § 955(e) to supervisory employees . . . because only supervisory employees can share the discriminatory intent and purpose of the employer.") (citing *Dici v. Commonwealth of Pennsylvania*, 91 F.3d 542, 553 (3d Cir.1996) (internal quotation marks omitted)); *Davis v. Levy, Angstreich, Finney, Baldante, Rubenstein & Coren, P.C.*, 20 F. Supp. 2d 885, 887 (E.D. Pa. 1998) ("[A]n individual supervisory employee can be held liable under an aiding and abetting/accomplice liability theory pursuant to § 955(e) for his own direct acts of discrimination or for his failure to take action to prevent further discrimination by an employee under supervision.").

"Supervisory employees may be held liable under [PHRA] Section 955(e) on the theory that only supervisors can share the discriminatory purpose and intent of the employer that is required for aiding and abetting." *Mathews*, 2008 U.S. Dist. LEXIS 35726, at *61-63. Therefore, "…an individual supervisory employee can be held liable under an aiding and abetting / accomplice theory . . . for [his or] her own act of discrimination or for [his or] her failure to take action to prevent further discrimination by an employee under supervision." *Id.* at *63.

Facts are in dispute as to whether Lepore aided and abetted Cianciulli's unlawful discriminatory conduct. "For liability to be imposed on an aiding and abetting theory…there must be a cognizable predicate offense, i.e. a violation… of the PHRA's primary anti-discrimination provision." *Lombard v. Lassip, Inc.*, Civ. 17-964, 2017 U.S. Dist. LEXIS 204780, at *11-12 (E.D. Pa. Dec. 13, 2017). Whether Lepore was on notice of Cianciulli's conduct

towards Plaintiff cannot be reconciled by the record before this Court.   If in fact Lepore was on notice of the conduct, its decision to transfer Plaintiff to a job site directly across the street from where Cianciulli was working and on the same site where Cianciulli's trailer was located,[23] could potentially constitute a violation of PHRA § 955(d) as described above. *See Frye v. Robinson Alarm Co.*, Civ. 97-0603, 1998 U.S. Dist. LEXIS 1331, at *11 (E.D. Pa. Feb. 11, 1998) ("Failure to take action to end the [alleged] harassment amounts to aiding and abetting…").   Accordingly, Defendant Lepore's Motion for Summary Judgment as it pertains to Count V is denied.

With respect to Cianciulli aiding and abetting the unlawful discriminatory conduct of Lepore,[24] precedent demonstrates that "an individual supervisory employee can be held liable under an aiding and abetting/accomplice theory . . . for [his] own act of discrimination." *Mathews*, 2008 U.S. Dist. LEXIS 35726, at *63. As described above, material facts remain in dispute as to whether Cianciulli is a supervisory employee under Title VII, and whether he was therefore instrumental in aiding and abetting Lepore's violation of PHRA §955(a). Accordingly, summary judgment must be denied.

### iii.    PFPO Claims

#### a.    PFPO Discrimination

In Count VI of his Complaint, Plaintiff brings a claim for discrimination against both Defendants on the basis of sex under PFPO § 9-1103(1)(a). (Compl. ¶¶ 66-69.)  Said Subsection provides as follows:

> (1)  It shall be an unlawful employment practice to deny or interfere with the employment opportunities of an individual based upon his or her race, ethnicity, color, sex (including pregnancy, childbirth, or a related medical condition), sexual orientation, gender identity, religion, national origin, ancestry, age, disability, marital status, familial status, genetic information, or domestic or sexual violence

---

[23]  *See* SUF ¶ 29; CSUF ¶ 29; Defs.' Mot. Summ. J., Ex. B at A91.
[24]  Plaintiff's Complaint directs Count V towards "Defendants."

victim status, including, but not limited to, the following:

> (a) For any employer to refuse to hire, discharge, or otherwise discriminate against any individual, with respect to tenure, promotions, terms, conditions or privileges of employment or with respect to any matter directly or indirectly related to employment.

Phila. Code §9-1103(1)(a).

Inasmuch as only employers may be held liable for sex discrimination under the PFPO, Cianciulli's Motion for Summary Judgment as it pertains to Count VI shall be granted. *See* Phila. Code §9-1103(1)(a).

With respect to Lepore's potential liability, sex discrimination claims brought under the PFPO are analyzed in the same manner as Title VII sex discrimination claims. *Joseph v. Cont'l Airlines*, 126 F. Supp. 2d 373, 376 n.3 (E.D. Pa. 2000). Accordingly, for the reasons stated above, Lepore's Motion for Summary Judgment as it pertains to Count VI is denied for the reasons set forth in this Court's Title VII and PHRA discrimination discussion hereinabove.

### b. PFPO Retaliation

In Count VII of his Complaint, Plaintiff brings a claim for retaliation under PFPO § 9-1103(1)(g), which makes it unlawful . . .

> For any person to harass, threaten, harm, damage, or otherwise penalize, retaliate or discriminate in any manner against any person because he, she or it has complied with the provisions of this Chapter, exercised his, her or its rights under this Chapter, enjoyed the benefits of this Chapter, or made a charge, testified or assisted in any manner in any investigation, proceeding or hearing hereunder.

Phila. Code §9-1103(1)(g).

Just as with discrimination claims, "[r]etaliation claims brought under the PFPO are analyzed in the same manner as Title VII retaliation claims…" *Downs v. Anapol Schwartz, PC*, Civil Action No. 14-630, 2015 U.S. Dist. LEXIS 106147, at *30 (E.D. Pa. Aug. 12, 2015). Like the PHRA, the language of Subsection (1)(g) of the PFPO extends liability for retaliation to

individual employees. *Vazquez,* 2017 U.S. Dist. LEXIS 160972, at *25. Accordingly, for the

reasons set forth in this Court's Title VII and PHRA retaliation discussion hereinabove, summary

judgment shall be denied.

   **c.**   **PFPO Aiding and Abetting**

  In count VIII of his Complaint, Plaintiff brings a claim for Aiding and Abetting under

PFPO § 9-1103(1)(h). (Compl. ¶¶ 73-75.)  Similar to the aiding and abetting provision of the

PHRA, Subsection 1103(1)(h) of the PFPO makes it unlawful . . .

> For any person to aid, abet, incite, induce, compel or coerce the doing of any
> unlawful employment practice or to obstruct or prevent any person from
> complying with the provisions of this Section or any order issued hereunder or to
> attempt directly or indirectly to commit any act declared by this Section to be an
> unlawful employment practice.

Phila. Code §9-1103(1)(h).

  As such, it is well settled that . . .

> Both Pennsylvania and Philadelphia impose individual liability on any person
> who aids, abets, incites, compels or coerces, or directly or indirectly commits
> unlawful discrimination. Liability will be imposed for a supervisor's own
> discriminatory conduct or their failure to take action against discrimination
> experienced by the employee.

*Ahern,* 183 F. Supp. 3d at 671.

  "For purposes of assessing claims such as the ones presented herein, Title VII, the

PHRA, and the PFPO have been interpreted in a similar fashion." *Id*. at 668. Accordingly, for the

reasons stated above in this Court's discussion regarding aiding and abetting under the PHRA,

judgment, as it pertains to Count VIII, shall be denied.

### vi. Assault and Battery

Last, Defendant Cianciulli seeks judgment on the assault and battery claim set forth in Count IX of Plaintiff's Complaint (Compl. ¶¶ 76-79.)  Cianciulli contends  Plaintiff's claim is barred by the Pennsylvania Workers' Compensation Act (hereinafter "WCA"), which "provides the exclusive remedy to a claimant against his employer" for injuries such as those put forth by Plaintiff.  (Defs.' Mot. Summ. J. 21.) Defendants also contend Plaintiff's Assault and Battery claim is abandoned because Plaintiff failed to address Cianciulli's arguments with respect to the claim. (Defs.' Reply Br. 10.)

It is true "…[courts] both within and beyond the Third Circuit routinely have held an [undefended] claim at issue to have been abandoned." *Evans v. Nine West Group, Inc.*, Civ. 00-4850, 2002 U.S. Dist. LEXIS 6427, at *12 (E.D. Pa. Apr. 15, 2002). *See also Glenn v. Raymour & Flanigan,* 832 F. Supp. 2d 539, 547 (E.D. Pa. 2011) ("failure to [mention] or address claims [in response to defendant's motion for summary judgment] waives opportunity to contest summary judgment on that ground."). However, Plaintiff does not ignore Cianciulli's argument—Plaintiff apparently misconstrued the argument. Plaintiff states he does not challenge Defendant Cianciulli's Motion regarding Plaintiff's Assault and Battery claim, under the presumption that Defendant Cianciulli's motion is "a partial motion for summary judgment and will not impact [Count IX because] Defendant Lepore argues [against] Plaintiff's claims for Assault and Battery [as if they were] against Defendant Lepore…[and] would [therefore] be barred by the Workers' Compensation Act…[but] Plaintiff never brought an action for Assault and Battery against Defendant Lepore, only Defendant Cianciulli." (Pl.'s Opp'n Summ. J. 4 n. 1.)   As such,  Plaintiff's counter-argument is that the Assault and Battery Claim is against Defendant Cianciulli, therefore the WCA is not applicable. While Plaintiff is mistaken that

Defendants' Motion did not address Defendant Cianciulli's liability under the WCA (Defs.' Mot. Summ. J., 27), it is also not the case that Plaintiff did not "address" Defendant Cianciulli's argument. *Glenn,* 832 F. Supp. 2d at 547. Therefore, this Court cannot construe the claim as abandoned in line with the jurisprudence above. In those cases and others, the movant's arguments were both unopposed and unaddressed.[25] *Evans,* 2002 U.S. Dist. LEXIS 6427 at *12; *Glenn,* 832 F. Supp. 2d at 547. Accordingly, the Court shall address Defendant Cianciulli's Motion with respect to Count IX.

The WCA is indeed "the exclusive remedy for work-related injuries suffered by an employee and provides employers with immunity from suits that flow from work-related incidences that are caused by a third party." *Martin-McFarlane v. City of Phila.*, Civ. 17-0118, 2017 U.S. Dist. LEXIS 177497, at *20 (E.D. Pa. Oct. 26, 2017). Although he WCA prevents an employee from holding a co-employee liable "at common law for any injury during employment[,]" there is an exception for "intentional wrong acts." *Warner v. B. Pietrini & Sons*, Civ. 618 EDA 2016, 2017 Pa. Super. LEXIS 2837, at *19 (Pa. Super. 2017) (citing 77 P.S. § 72). The WCA "provides that [an] injury arising in the course of employment…shall not include an injury caused by the act of a third person intended to injure the employee because of reasons personal to him, and not directed against him as an employee or because of his employment." *Kortyna v. Lafayette College*, 47 F. Supp. 3d 225, 244 (E.D. Pa. 2014). "This carve-out has come to be known as the 'third-party attack' or 'personal animus' exception." *Id.* "[Courts] have applied the exception in very limited circumstances, [and] application of the…'personal animus'…exception has varied considerably." *DeWyer v. Temple Univ.*, Civ. 00-1665, 2001 U.S.

---

[25] *See also Seals v. City of Lancaster*, 553 F. Supp. 2d 427, 432 (E.D. Pa. 2008) ("[P]laintiff's failure to *mention* these issues in her summary judgment response constitutes abandonment of those claims.")(emphasis added).

Dist. LEXIS 1141, at *13. (E.D. Pa. Feb. 5, 2001) (internal citation omitted). "[The] critical inquiry in determining the applicability of the [personal animus] exception is whether the attack was motivated by personal reasons, as opposed to generalized contempt or hatred, and was sufficiently unrelated to the work situation so as not to arise out of the employment relationship." *Fugarino v. University Servs.*, 123 F. Supp. 2d 838, 844 (E.D. Pa. 2000). Therefore, for Plaintiff's assault and battery claim to survive summary judgment, there must be facts of record to establish that Cianciulli "assaulted and [committed battery upon Plaintiff] for personal reasons unrelated to [his] employment." *Martin-McFarlane*, 2017 U.S. Dist LEXIS 177497 at *21.[26]

In this case, genuine issues of material fact remain regarding whether Cianciulli: (1) pinched Plaintiff's nipple when he was holding a stone in place; (2) came up behind Plaintiff while Plaintiff was kneeling, bear hugged Plaintiff, then laid down on top of him and "humped him" for at least a minute; (3) "tapped" Plaintiff on his genitals with a trowel; (4) poked Plaintiff's "butt hole" with his finger while Plaintiff was crawling into a scissor lift; (5) poked Plaintiff's "butt hole" with a caulk tube, then came up behind Plaintiff and slapped him hard on

---

[26] The court in *Fugarino* conducted an extensive inquiry into state and federal case precedent analyzing the personal animus exception, deciding that the plaintiff's intentional infliction of emotional distress claim fell outside of the personal animus exception because the harassment alleged to have caused the emotional distress was "work related" and "directed at [the plaintiff] while at work." *Fugarino*, 123 F. Supp. 2d at 844. However, the *Fugarino* court cites precedent indicating that sexual harassment may fall within the personal animus exception. *Id.* For example, the court in *Hoy v. Angelone* applied the personal animus exception because the defendant's sexual propositions and related behavior were personal and directed toward the plaintiff. 456 Pa. Super. 596, 691 (Pa. Super. Ct. 1997). The *Hoy* court looked to "various forms of abusive treatment, including sexual propositions, vile and filthy language, off-color jokes, physical groping, and the posting of sexually suggestive pictures." *Id.* at 603.A fellow district court agreed with *Hoy*'s analysis. *See Abert v. RehabCare Group, Inc.*, Civ. 12-393, 2013 U.S. Dist. LEXIS 55099, at *79 (W.D. Pa. Feb. 22, 2013)("The Court finds the [decision] in *Hoy*…convincing and dispositive of the [WCA] preemption issue here.")(*rev'd in part on other grounds*, Civil Action No. 2:12-CV-393, 2013 U.S. Dist. LEXIS 52450 (W.D. Pa. April 10, 2013).

his behind; and, (6) after Plaintiff had been transferred to a different work site, "slapped Plaintiff on the ass." (SUF ¶¶ 27(a)-(f), 31(b)-(c); CSUF¶¶ 27(a)-(f), 31(b)-(c).) If a jury was to credit Plaintiff's testimony, such conduct could quite certainly constitute "various forms of abusive treatment." *Hoy*, 456 Pa. Super. at 603. Though the conduct was directed to Plaintiff at work, such conduct was clearly not "work related."[27] *Fugarino*, 123 F. Supp. 2d at 844. Accordingly, this Court similarly finds that a jury could reasonably conclude the WCA personal animus exception applies.

Assuming arguendo the WCA personal animus exception does apply, the court must now assess Plaintiff's assault and battery claims. The Pennsylvania Supreme Court has defined battery as 'a harmful or offensive contact,' and assault as 'an act intended to put another person in reasonable apprehension of an immediate battery, and which succeeds in causing an apprehension of such battery.'" *Giannone v. Ayne Inst.*, 290 F. Supp. 2d 553, 568 (E.D. Pa. 2003) (internal citation omitted). As discussed repeatedly above, the record is not undisputed with respect to whether or not Cianciulli repeatedly committed offensive contact upon Plaintiff. Similarly, the record does not dispositively demonstrate that any intent behind the actions alleged by Plaintiff was not to intentionally put Plaintiff in "reasonable apprehension" of a battery, or that such apprehension did not occur. Instead, Cianciulli simply argues the applicability of the WCA to rebut Plaintiff's assault and battery claim. (Defs.' Mot. Summ. J., 21-23.) Accordingly, Cianciulli's Motion for Summary Judgment as it pertains to Count IX shall be denied.

---

[27] The *Fugarino* court found " "reprimands, criticisms, and searching of [the plaintiff's] desk" to be work related. 123 F. Supp. 2d at 844.

**V.      Conclusion**

For the reasons set forth herein, Defendant Cianciulli's Motion for Summary Judgment is granted as it pertains to Counts III and VI, and denied with respect to Counts IV, V, VII, VIII, and IX. Defendant Lepore's Motion for Summary Judgment is denied in its entirety.

An appropriate Order follows.


BY THE COURT:


/s/  C. Darnell Jones, II     J.